In the Matter of LINWOOD J. PUTNAM et al., Respondents, against JAMES MARSHALL et al., Constituting the Board of Education of the City of New York, Appellants.

Argued June 5, 1941; decided July 29, 1941.

*William C. Chanler,* Corporation Counsel (*Edward J. McGratty, Jr.,* and *Nicholas Bucci* of counsel), for appellants. The amendment to section 889 of the Education Law (Cons. Laws, ch. 16) did not require that the formulæ

employed by the Board of Education in computing custodial compensation for a particular group of buildings in 1927 be forever after used to fix the custodial compensation in new types of buildings equipped with fuel oil-burning heating systems unknown in 1927. (L. 1931, ch. 540.) The amendment to section 889 of the Education Law does not require the Board to increase the annual compensation fixed in respect of a Class A or Class B school whenever part of the school grounds is paved. (L. 1931, ch. 540.)

*William F. Cassin* for respondents. The power to reduce custodial compensation below the December 29, 1927, schedules rests solely with the Legislature. (*Matter of Brennan* v. *Board of Education*, 245 N. Y. 8; *Matter of Henry Hudson Parkway Authority* v. *Kern*, 167 Misc. Rep. 699; 255 App. Div. 770; *Matter of Moses* v. *Board of Education*, 127 Misc. Rep. 477; 218 App. Div. 811; 245 N. Y. 106; *Matter of College of City of New York* v. *Hylan*, 205 App. Div. 372; *Louderback* v. *Board of Education*, 216 App. Div. 805; 244 N. Y. 511; *Brown* v. *State of New York*, 242 App. Div. 85; 266 N. Y. 598; *Matter of Talbot*, 171 Misc. Rep. 974.)

LEHMAN, Ch. J. The petitioners are " custodian-engineers " of schools in the city of New York and are in the competitive class of the civil service. Compensation to custodian-engineers of schools in New York city is, with few exceptions, fixed or measured upon what is known as the indirect system. The salary of a custodian-engineer is intended to include not only compensation for the services rendered by him but also the compensation or wages of helpers who are not taken from competitive civil service lists but who are selected and employed by him, subject to the approval of the Board of Education. The petitioner Putnam was appointed as custodian of Public School 108 in the Bronx on August 16, 1938. The school had been completed shortly before his appointment and is equipped with an oil-burning heating plant. The petitioner Fairbanks was appointed custodian of Public School 143 in the borough of

Queens, in March, 1938. That school was completed in 1929 and is not equipped with an oil-burning heating plant. They have been paid the salaries fixed in 1940 by resolution of the Board of Education for their positions. They contend that the salaries so fixed violate mandatory provisions of section 889 of the Education Law (Cons. Laws, ch. 16), and they have brought proceedings under article 78 of the Civil Practice Act to compel the Board of Education to comply with the statutory provisions. In the courts below their contentions have been upheld.

Section 883 of the Education Law, entitled "Salaries in cities of the first class having a population of one million or over," provides that the Board of Education shall adopt and file schedules and schedule conditions, "which schedules and schedule conditions shall fix the compensation or salaries of * * * members of the teaching and supervising staffs * * * and of other employees of the board of education." Such "schedules and schedule conditions" must, in accordance with the statute, fix the salaries of the custodial staff as well as the salaries of the other employees of the Board of Education. In 1927 the Board of Education adopted new schedules, which in general, increased the salaries of teachers and other employees of the Board of Education. The resolution adopted by the Board on December 29, 1927, provides, amongst other things, "Resolved, That the compensations of members of the custodial staff be, and they are hereby, fixed in accordance with the conditions outlined in the following report and accompanying tabulation to take effect January 1, 1928." The resolution then sets forth certain "Principles Involved in the Readjustments of Janitorial Compensation:

"1. Buildings to be classified in two groups as follows:

"Class A. High pressure plant with plenum system, and vacuum plants with motor driven blowers.

"Class B. Gravity return plants with motor driven blowers for plenum system; also buildings where low pressure boilers, hot air furnaces or stoves are used. * * *

" It is proposed to simplify the method of calculating custodial compensation, first, by classifying buildings in accordance with the work required to operate the heating units; and second, by calculating the whole allowance for cleaning and heating by multiplying the size of the building expressed in quarter thousand square feet by the appropriate new rate, which, as in the present schedule, starts at the highest rate for the small buildings and descends by quarter thousand square feet to the lowest rate which applies to the large buildings.

" Similarly, new basic rates have been evolved for calculating the allowance for the cleaning of the paved surface."

Basic rates are then set forth by which the salary to be paid to the custodian of each school classified in Class A and of each school classified in Class B can be computed in accordance with a formula contained in the resolution. The amount of surface of paved floors in each building or playground is the determinative factor in calculating the allowance, included in the salary of a custodian, for the cleaning of the premises. Other factors formulated in the resolution must be used in computing the allowance for the care of the heating equipment. The resolution, after stating " the principles involved in the readjustments of janitorial compensation " and the rates and formula used by the Board for computing such readjustments, sets forth the exact salary as so computed for the custodian of *each* school classified in Class A and of *each* school in Class B.

Section 889 of the Education Law, as amended by chapter 530 of the Laws of 1930 and chapter 540 of the Laws of 1931, provides that " The schedules and schedule conditions fixing the salaries of members of the teaching and supervising staffs, the administrative staff and of all other employees of the board of education of a city having a population of one million or over, * * * shall be not less than the salaries and salary increments fixed by the schedules and schedule conditions adopted by such board of education * * * and on file in the office of the state commissioner of education on the fifth day of March, nineteen hundred thirty-

one, * * *." The salaries paid to the petitioners in accordance with resolutions of the Board of Education adopted in 1940 are lower than their salaries would be if computed in exact compliance with the " principles " and formula contained in the resolution of 1927 for computing janitorial compensation on file in 1931. That, it is said, constitutes a violation of the provisions of section 889.

As we have pointed out, the public school of which the petitioner Putnam is custodian was not completed until 1938. For that reason it was not classified and no salary for its custodian was fixed by any schedule or schedule conditions on file in 1931. At that time, too, no schools had been equipped with oil-burning heating plants and the Board of Education maintains, though this is disputed, that oil-burning furnaces require less care than the furnaces in use in the older buildings, and that buildings equipped with such oil-burning plants should be put in a different classification from buildings with the older form of plant. The courts below have held that it is immaterial whether or not these differences exist. The Board of Education has been commanded to fix the compensation of custodians of all schools, new or old, at an amount not less than the compensation would be if computed in accordance with the " principles," basic rates and formula contained in the resolution of 1927.

The provisions of section 889 are clear, unambiguous and mandatory. Little room, if any, is left for construction or for discretion in their application. The Legislature, which has conferred upon the Board of Education power to determine the salary and compensation of all employees, has placed a rigid restriction upon its exercise. The salaries of positions as fixed in 1931 may not be reduced. Under changed conditions the salary attached to a particular position in 1931 may seem excessive in 1941. The Legislature has power to reduce a salary which seems to it excessive. It has withheld such power from the Board of Education. Thus the problem which is presented upon this

appeal is narrow. The problem is whether the resolutions on file in 1931, which formulated general principles and basic rates for calculating the salaries of custodians of schools in the city of New York, and which in addition *specified the salary, so calculated,* of the custodian of each school then in existence, fixed the salaries of all custodians, even of custodians of schools thereafter established or altered, at the amount which such custodians would receive if their schools were classified in one of the classes existing in 1931, and if their salaries were calculated in accordance with the principles and basic rates contained in the resolution; or whether it fixed the salary only of custodians of schools therein specified and at the amount therein stated. The question concerns rather the construction of the resolutions on file in 1931 than the construction of the clear and unambiguous language of the statute.

In its resolutions on file in 1931, the Board of Education determined that by rigid application of the principles, then formulated, fair compensation could be computed in all cases and it chose to determine all salaries by such computation rather than by attempting to fix salaries on other " principles," or in accordance with discretion entirely unfettered. So long as the city chose to pay custodians upon the so-called indirect system, and custodians of new buildings performed substantially the same services under substantially similar conditions, the Board of Education might, if it saw fit, continue to compute the salaries to be paid to custodians of such new buildings in similar manner. The salary schedules as filed in 1931 did not, however, purport, even assuming that were possible, to fix the salaries to be paid in the future to custodians of new buildings to be erected thereafter. The position of custodian in each new building is in effect a new position and the salary of such a new position is not fixed by any schedule previously filed. The Board of Education has power, therefore, to place new buildings with oil-heating equipment in a new class and to fix the compensation of custodians in such buildings without regard to the " principles " applied in the

computation of salaries included in the schedules on file in 1931 and applicable to positions then established.

What we have said so far applies only to the salary of the petitioner Putnam as custodian of the new school in the Bronx. The petitioner Fairbanks is custodian, as we have said, of a school which was completed before 1931 and the salary of custodian of that school was fixed by the schedules and schedule conditions on file in 1931, at $4,440, in accordance with the "principles," basic rates. and formula set forth in the resolution of 1927. The present holder of that position, Fairbanks, is now receiving compensation in the same amount, but in the interim there has been increase in the paved surface of the playground and the Board of Education has decided that no increased compensation should be paid to a custodian merely because surface previously unpaved is now paved, though if his salary were fixed in accordance with the "principles" and formula originally used for computing the salary for that position, the custodian would be entitled to receive an increase of compensation. The Board of Education contends that increase of paved surface in a playground does not increase the labor or expenses required of the custodian for its proper maintenance. Such considerations may affect the sufficiency of the salary as fixed by the Board of Education. They do not affect the powers of the Board and this court is concerned only with the powers of the Board, not with the wisdom of the exercise of those powers. The question we must decide on this branch of the case is whether the "principles" provided in the resolution of 1927 for computation of salaries or compensation constitute part of the schedules of salaries and schedule conditions *fixing* such salaries. In our opinion those "principles" cannot be given such effect.

We reiterate that the principles, rates and formula constitute part of the method of computing the salaries thereafter set forth in the schedule of salaries. They are not part of the "schedules" nor are they, in our opinion, "schedule conditions," fixing salaries. In those parts of

the same resolution in which the Board of Education adopted new schedules of salaries for teachers and members of the supervising staff, there are appended to some of the schedules " schedule conditions," so denominated in the resolution. These " schedule conditions " are in true sense conditions with which the holder of a position must comply in order to receive the salary, e. g., they provide that " teachers who meet the standards to be set shall receive this salary." The provisions upon which the petitioners rely are in no sense " conditions."

The question whether the Board of Education has power to change compensation for established positions from the direct system to an indirect system is not presented here and we do not consider it. We decide only that where new schools have been built the Board of Education is not compelled to fix the salary of the custodians of such new schools at an amount not less than the salary would have been if the school had been erected before 1931 and the salary of the custodian had been computed in accordance with the " principles " applied in fixing the salaries of custodians of existing schools; and that the Board of Education may fix the salary of a custodian of a school in existence before 1931 on different principles from those used by the Board in computing the salary of custodians in the *schedule of salaries* on file in that year, provided only that by the new formula the compensation is not computed and fixed at an amount lower than the actual salary stated in salary schedules on file in 1931.

The orders should be reversed and the proceedings dismissed, with costs in all courts.

CONWAY, J. (dissenting). The Board of Education of the City of New York having adopted and filed its schedules and schedule conditions for custodial compensation, as directed by the Education Law, must abide by them in view of section 889 of the Education Law which provides that the compensation of custodians may not be reduced below the 1927 schedules and the schedule conditions on file

on March 5, 1931. The compensation provided applied not only to schools and school buildings then in existence but also to those to be built thereafter. There is no distinction made in the schedules as to any particular type of heating plant or as to kind of fuel burned therein. The attempted adoption of the so-called " Amendment to Salary Schedules of Custodial Staff " and of the resolution adopted by the Board of Education on June 26, 1940, violates the purposes of, and the results achieved to date through, the Lockwood-Donahue law, the Dick-Rice law, chapter 530 of Laws of 1930 and chapter 540 of Laws of 1931. Moreover, an attempt was made at the legislative session of 1940 to amend the Education Law by granting to the Board of Education the power to fix salaries of certain of its employees, including its custodian engineers, but the Legislature refused such amendment. The changes sought must come about through legislative action and not through the appellant Board. The order should be affirmed.

LOUGHRAN, FINCH, RIPPEY, LEWIS and DESMOND, JJ., concur with LEHMAN, Ch. J.; CONWAY, J., dissents in memorandum.

Orders reversed, etc.