DORIS S. HARMAN et al., Appellants and Respondents, et al., Plaintiffs, v. BOARD OF EDUCATION OF THE CITY OF NEW YORK et al., Respondents and Appellants.

Argued May 26, 1949; decided October 13, 1949.

*Joseph H. Kohan* and *Louis Kohan* for plaintiffs, appellants and respondents. I. Section 889 (now § 3102, subd. 4, par. [b]; § 3103) of the Education Law establishes minimum salaries for the teaching staffs in New York City schools at not less than the salaries and increments fixed by the schedules and schedule conditions adopted by the board of education and on file in the State Commissioner of Education's office March 5, 1931. (*Matter of Putnam* v. *Marshall,* 286 N. Y. 485; *Nelson* v. *Board of Higher Education of City of N. Y.,* 263 App. Div. 144, 288 N. Y. 649; *Matter of Cox* v. *Board of Education of City of N. Y.,* 178 Misc. 95, 263 App. Div. 740; *Cottrell* v. *Board of Education of City of N. Y.,* 181 Misc. 645, 267 App. Div. 817, 293 N. Y. 792.) II. Section 889 of the Education Law is mandatory and only the salary schedule and schedule conditions set forth in section 65, subdivision 8(b), of the by-laws on file March 5, 1931, is legally effective. (*Matter of Putnam* v. *Marshall,* 286 N. Y. 485; *Wuesthoff* v. *Germania Life Ins. Co.,* 107 N. Y. 580; *People ex rel. Lawton* v. *Snell,* 216 N. Y. 528; *French* v. *Edwards,* 13 Wall. [U. S.] 506; *People ex rel. J. B. Lyon Co.* v. *McDonough,* 173 N. Y. 181; *People ex rel. Huff* v. *Graves,* 277 N. Y. 115; *Matter of Chase Nat. Bank of City of N. Y.* v. *Guardian Realties,* 283 N. Y. 350; *Matter of Metropolitan Life Ins. Co.* v. *Boland,* 281 N. Y. 357; *Lockwood* v. *Gehlert,* 127 N. Y. 241; *People ex rel. Cayuga Nation* v. *Land Comrs.,* 207 N. Y. 42.) III. If section 95, subdivision 8(b), of the by-laws of the board of education is legally effective, then section 23 of the regulations of the board of examiners in effect in 1932 is discriminatory to the

extent that credit for teaching in schools of the city of New York is not granted for teaching in schools other than the schools of the city of New York. (*Cottrell* v. *Board of Education of City of N. Y.*, 181 Misc. 645, 267 App. Div. 817, 293 N. Y. 792; *Merchants Refrigerating Co.* v. *Taylor*, 275 N. Y. 113.) IV. If section 95, subdivision 8(b), of the by-laws of the board of education is legally effective then the plaintiff Kratzke on reappointment was entitled to the salary provided in such by-law. (*Matter of Varian*, 150 App. Div. 453, 206 N. Y. 658; *Throckmorton* v. *State of New York*, 128 Misc. 599.)

*John P. McGrath, Corporation Counsel* (*Arthur H. Kahn, Seymour B. Quel* and *Michael A. Castaldi* of counsel), for defendants, respondents and appellants. I. Section 95, subdivision 8(b), of the by-laws of the board of education was validly adopted on January 8, 1930, and validly amended on September 25, 1930. The filing of such by-law beyond the thirty-day period provided by section 889 of the Education Law in no way affected the validity of the by-law. Accordingly, the complaints of the " Harman group ", which are based entirely upon the asserted invalidity of such by-laws, were properly dismissed. (*Matter of Brenner* v. *Bruckman*, 253 App. Div. 607; *Matter of O'Connor* v. *Emerson*, 196 App. Div. 807, 232 N. Y. 561; *People ex rel. Huff* v. *Graves*, 277 N. Y. 115; *Matter of Rochester Gas & Elec. Corp.* v. *Maltbie*, 188 Misc. 39, 272 App. Div. 162; *Looney* v. *Hughes*, 26 N. Y. 514; *New York City Employees' Retirement System* v. *Eliot*, 267 N. Y. 193; *New York Tel. Co.* v. *Board of Education*, 270 N. Y. 111; *City of New York* v. *Wilson & Co.*, 278 N. Y. 86.) II. The failure to grant reinstated teachers the same salary credit for prior teaching experience as is granted to original entrants is not discriminatory, nor does it result in any lack of uniformity in the salary schedules within the meaning of section 882 of the Education Law. (*Matter of Stracquadanio* v. *Department of Health*, 285 N. Y. 93; *Faingnaert* v. *Moss*, 295 N. Y. 18; *Matter of Brady* v. *Board of Education of City of N. Y.*, 136 Misc. 1, 229 App. Div. 853; *Barringer* v. *Powell*, 230 N. Y. 37; *Welker* v. *Lathrop*, 210 N. Y. 434.) III. Reinstatement is discretionary with the board of education and the board could condition reinstatement upon such terms as it deemed proper. The board had the power to repeal the voluntary grant of salary credit to reinstated teachers notwithstanding the provisions of

section 889 of the Education Law. Accordingly, the complaints of the " Connolly group " should have been dismissed. (*Matter of Doering* v. *Hinrichs,* 289 N. Y. 29; *Matter of Bricker,* 58 N. Y. St. Dept. Rep. 452; *Stein* v. *Board of Education of City of N. Y.,* 284 N. Y. 768; *Firestone* v. *Board of Education of City of N. Y.,* 284 N. Y. 770; *McCaughn* v. *Hershey Chocolate Co.,* 283 U. S. 488; *Matter of Mounting & Finishing Co.* v. *McGoldrick,* 294 N. Y. 104; *Matter of Kolb* v. *Holling,* 285 N. Y. 104; *Story* v. *Craig,* 231 N. Y. 33.) IV. Aside from the fact that the validity of the rejection of the 1928 application is not properly raised herein, it would seem that a delay of almost twenty years should bar plaintiff Kratzke as a matter of law. (*Matter of Curtin* v. *Dorman,* 293 N. Y. 505.)

BROMLEY, J. These are consolidated actions by twenty-nine schoolmistresses, employees of the Board of Education of the City of New York, against that body, the superintendent of schools and the board of examiners. By cross appeals all parties challenge the judgment below, which affirmed an award in favor of eleven plaintiffs and a judgment of dismissal as to the remainder. Madeline Stattel, a member of the victorious group, had discontinued her action after judgment in the trial court.

We are confronted with questions concerning the validity and effect of a number of by-laws of the board relating to the salary credits to be accorded teachers re-employed by the board on account of their previous experience in the schools of New York City. All of the plaintiffs are reinstated teachers who seek increased salary credits and payment of such sums as should have accrued since their reinstatement and within the applicable Statute of Limitations.

A summary of the statutes and by-laws involved will aid in posing the questions at issue. For thirty years past the board of education has been empowered to fix the salaries of its teaching employees through its by-laws, so long as those salaries were not lower than the minimum salary schedules set forth in the Education Law (Education Law, §§ 882, 883,* now §§ 3101, 3102). Section 882 also has commanded that school districts employing eight or more teachers must adopt " uniform schedules of salaries for all teachers." During the same period the Education

---

* I follow the trial court in employing the section numbers used prior to the recodification of 1947. (L. 1947, chs. 778, 820.)

Law has provided that any by-laws containing salary schedules or conditions, and any amendments thereto, " shall within thirty days after the adoption thereof be filed in the office of the state commissioner of education " (Education Law, § 839, now § 3103). The schedules of salary credits to be accorded for previous experience to teachers employed in the New York City school system clearly fall within the scope of the last statute.

Prior to 1930, a teacher who was reinstated in the schools of New York City received full credit for all years of prior experience in those schools, pursuant to by-law, section 95, subdivision 8, of the board of education. At the same time, a new teacher, with previous experience in schools without the New York City system or in an industry related to his proposed subject of instruction, received a salary credit equated under by-law, section 23, of the board of examiners. The maximum credit under that schedule was seven years for twelve or more years of prior experience in a high school or college.

On January 8, 1930, the board of education adopted a new provision concerning reinstated teachers, by-law, section 95, subdivision 8(b). Therein it was provided that a reinstated teacher, who had applied for re-employment more than one year after withdrawal, should receive " credit for so much of the service standing to his credit, immediately prior to his withdrawal, as is equal to said service credit divided by the time computed in years and fractional parts of a year, which shall have elapsed between the date of his withdrawal and the date of his reemployment; provided, however, that on reemployment, he shall not receive a greater service credit than is equal to the number of years prescribed in his schedule for the maximum salary less three years." That by-law was amended, on September 25, 1930, so as to afford all who had applied for re-employment prior to September 24, 1930, full credit for all prior service.

Since 1931, section 889 of the Education Law has contained a provision that no salary schedule or condition for teachers in New York City may provide less than the salary schedules " adopted by such board of education  *  *  *  and on file in the office of the state commissioner of education " on March 5, 1931 (L. 1930, ch. 530, as amd. by L. 1931, ch. 540. The original " freeze date " was February 1, 1930). By-law, section 95, sub-

division 8(b), was not filed with the commissioner until April 20, 1932.

On July 15, 1942, the board of education repealed all of its by-laws relating to salary credit for reinstated teachers. No teacher re-employed since that date has received any credit for prior experience.

All of the plaintiffs had taught in the schools of New York City and had resigned their positions prior to 1930. All are now employed as teachers, having been reinstated at various times since that year. For our purposes they fall into two groups. The " Connolly group " now consists of eleven teachers who were reinstated after July 15, 1942, pursuant to applications filed prior to September 24, 1930. They have received no salary credits for their prior experience. The " Harman group " includes seventeen teachers who have been reinstated under applications filed after September 24, 1930. Some, re-employed prior to 1942, have received salary credits under by-law, section 95, subdivision 8(b); the remainder have received no credits.

All plaintiffs alleged four causes of action, seeking (1) a declaration that by-law, section 95, subdivision 8(b), is invalid under section 889 of the Education Law, since it was not filed within thirty days of adoption and since it affords less credit than the by-law which was then on file; (2) recovery of the difference between their lawful salaries, under the by-law on file at the freeze date, and the salaries which plaintiffs have received; (3) a declaration that the same by-law (§ 95, subd. 8[b]) is invalid under section 882 of the Education Law, since it affords less credit to plaintiffs than they would have received under by-law, section 23, of the board of examiners, and thus discriminates against reinstated teachers in favor of their colleagues whose prior experience has been gained in other schools; (4) recovery of the difference between the salaries plaintiffs have received and salaries equivalent to those afforded under by-law, section 23.

Respondents have contended that the award of salary credit to reinstated teachers is a matter within the discretion of the board, and that the by-law of July 15, 1942, effectively cancelled all provisions for such credit.

As the case now stands both courts below have held that the by-law of 1942 is invalid under the " freeze " provisions of sec-

tion 889. By-law, section 95, subdivision 8(b), has been sustained under section 889, upon the grounds that the delay in filing was merely a clerical error, that the filing provisions of the statute are merely directory, and that the by-law — duly adopted before March 5, 1931 — shall be deemed to have been on file at that date. The two dissenting Justices in the Appellate Division felt that the statute would be offended unless plaintiffs received full credit under the by-law actually on file on March 5, 1931. The by-law also has been sustained under section 882, upon the ground that plaintiffs have failed to establish an unlawful discrimination.

Consequently, the " Connolly group " of plaintiffs have received judgment in their favor on their first two causes of action, under the express terms of by-law, section 95, subdivision 8(b), rather than the theory of their complaint. The " Harman group " have suffered dismissal as to those claims, and the third and fourth causes of action have been dismissed as to all plaintiffs.

With respect to the amendment of 1942, the judgments below are manifestly correct; that by-law must fall under the mandate of section 889. We have said before that " The provisions of section 889 are clear, unambiguous and mandatory. Little room, if any, is left for construction or for discretion in their application. * * * The salaries of positions as fixed in 1931 may not be reduced " (*Matter of Putnam* v. *Marshall*, 286 N. Y. 485, 490, LEHMAN, Ch. J.). In light of the more recent case, in which similar action of the board with respect to the credit granted for " outside " experience under by-law, section 23, of the board of examiners was held invalid (*Cottrell* v. *Board of Education of City of N. Y.*, 181 Misc. 645, affd. 267 App. Div. 817, affd. 293 N. Y. 792), it is impossible to conclude that the 1942 amendment should be sustained. That the board has regarded as completely discretionary its power to grant credit to reinstated teachers is immaterial, since no reservation to that effect was contained in its by-laws on March 5, 1931.

In considering plaintiffs' first challenge to the validity of by-law, section 95, subdivision 8(b), it must be conceded that the provision should have been filed with the commissioner months prior to March 5, 1931. It was not on file at that date, and was not filed until April 20, 1932. It was the duty of the secretary of the board to file the document, and we cannot ques-

tion the trial court's finding that his default was due solely to inadvertence and clerical error. There is no indication that the commissioner performed any function with respect to the by-laws on file, save to act as their custodian.

The act of filing was a ministerial duty. We can but look to the statute to ascertain whether the Legislature has ordained that filing be essential to the validity of such a by-law. The language of section 889 prior to enactment of the " freeze " provision, and past experience with analogous statutes (*People* v. *Karr,* 240 N. Y. 348; *People* v. *Board of Supervisors of Ulster Co.,* 34 N. Y. 268; *Sears* v. *Burnham,* 17 N. Y. 445; and see *People ex rel. Huff* v. *Graves,* 277 N. Y. 115, 119–122), indicate that the command was merely directory, so that an inadvertent failure to comply would not be fatal. In the amendment of 1930, the Legislature spoke of schedules " adopted  *  *  *  and on file " at the " freeze " date (L. 1930, ch. 530). I feel that those terms were intended only to denote the salary schedules then in effect, and that no special significance should be attached to the words " on file ". Had it been intended to strike down any amendments properly adopted prior to the " freeze " date but not then filed, that purpose surely would have been set forth more explicitly. Thus construed, the statute permits us to sustain the conclusion below that the challenged by-law should be deemed to have been on file on March 5, 1931, and to affirm the judgment in respect of the first two causes of action.

Plaintiffs' challenge of the by-law as discriminatory, in violation of section 882 of the Education Law, rests upon the thesis that there can be no rational basis for the alleged distinction between reinstated teachers and those whose prior experience was gained in other schools or in industry. The challenge was rejected by the trial court upon the ground that plaintiffs had failed to establish that the entire class of reinstated teachers had suffered in relation to the entire class of teachers with outside experience. The court also held that section 882 related only to geographical uniformity of salary within the area administered by a board of education. Both conclusions are unsound. In the context of our well-established constitutional prohibitions against arbitrary and baseless discrimination by law (U. S. Const., 14th Amendt., § 1; N. Y. Const., art. I, § 11), the statute must be construed to prohibit all such distinctions. Nor should plaintiffs' challenge fail merely because they fall within a sub-

class which has suffered an unlawful discrimination not shared by some other members of their class.

However, plaintiffs' contention clearly lacks merit. Although they do not squarely raise a constitutional question, the essential similarity of the issues arising under the equal protection clauses of the State and Federal Constitutions makes it pertinent to recall that "One who assails the classification * * * must carry the burden of showing that it does not rest upon any reasonable basis, but is essentially arbitrary" (*Lindsley* v. *Natural Carbonic Gas Co.*, 220 U. S. 61, 78–79). The record herein demonstrates that plaintiffs have not met that burden. On the contrary, the evidence tends to establish a rational basis for any discrimination which may exist. Eligibility requirements are far more stringent for original applicants than for those who seek reinstatement, and examinations for the latter are much simpler. Teachers seeking reinstatement take a shorter and less arduous qualifying examination, while new applicants take a competitive examination. Bearing in mind those facts and the distinctions between the two formulas — that teachers with outside experience receive an equated credit under a schedule which gives seven years' credit for twelve years of previous experience in a high school or college, while reinstated teachers receive a credit equal to their years of prior service divided by the interval between withdrawal and re-employment — it would be impossible to hold that any difference in credit was unreasonable. Therefore, the third and fourth causes of action were properly dismissed as to all plaintiffs.

Plaintiff Kratzke, re-employed under an application filed after September 24, 1930, cannot challenge herein the rejection of her prior application proffered before that date (cf. *Matter of Curtin* v. *Dorman,* 293 N. Y. 505, 509). Her complaint was properly dismissed as to the first and second causes of action, "without prejudice to her administrative remedy, if any," under the Education Law.

The judgment should be affirmed, without costs.

CONWAY, J. (dissenting). By chapter 645 of the Laws of 1919 and chapter 680 of the Laws of 1920 (the latter popularly known as the "Lockwood-Donohue Law") the Legislature increased State aid to the school systems of the cities of the State, and

in connection therewith a new article, numbered 33-B and entitled " SALARIES OF THE MEMBERS OF THE SUPERVISING AND TEACHING STAFF IN CITY SCHOOLS ", was added to the Education Law. It was therein provided that the board of education of each city of the State shall adopt by-laws fixing the salaries of members of the teaching staff, among others. (Education Law, § 882.) But by section 883 of article 33-B, the Legislature further provided that the salaries and salary increments so fixed by the Board of Education of the City of New York should not be less than those expressly prescribed by the Legislature in schedules contained in that section. This in effect imposed a mandatory minimum salary for teachers in the New York City school system. In order to assure compliance by the board and to provide for a ready reference point for the Legislature, the act further provided that a " copy of the schedules and schedule conditions approved by the board of education of each city together with a copy of such changes in schedules and schedule conditions as are made in conformity with this article, certified by the secretary of the board, shall, within thirty days after the adoption thereof, be filed in the office of the state commissioner of education." (§ 889.)

In succeeding years, additional State aid was forthcoming (cf. L. 1927, ch. 572, the Dick-Rice Law; *Matter of Russell* v. *Buck,* 294 N. Y. 50, 54) and salaries were generally increased over the statutorily prescribed minimum levels. But, during that period, the board, by virtue of the power granted in section 882 permitting it to adopt by-laws fixing teachers' salaries and salary increments, could still reduce such increased salaries so long as such reductions did not fall below the mandatory minimum levels.

In 1931, the Legislature determined that a further limitation on the board's power was necessary. As we said in *Matter of Russell* v. *Buck* (*supra,* pp. 54–55) " The State, granting large sums to New York City in aid of its school system, insisted upon minimum standards, including minimum pay." The Legislature accordingly amended section 889 of the Education Law. That section, unchanged since 1919, required that a copy of the schedules and schedule conditions approved by the board of education, certified by the secretary of the board, be filed in the office of the State Commissioner of Education within thirty days after the adoption thereof. The amendment, popularly known as the

" Salary Freezing Law ", operated to " freeze " such previously adopted and filed schedules and schedule conditions so that the board could not reduce the salaries therein fixed. In pertinent part, the amendment, as first enacted (L. 1930, ch. 530), provided as follows: " * * * The schedules and schedule conditions fixing the salaries of members of the teaching and supervising staffs * * * of the board of education of a city having a population of one million or over * * * shall be not less than the salaries and salary increments fixed by the schedules and schedule conditions *adopted* by such board of education * * * *and on file* in the office of the state commissioner of education on the first day of February, nineteen hundred thirty. * * * " (Emphasis supplied.) The following year, 1931, the Legislature extended the " freeze " date to March 5, 1931. (L. 1931, ch. 540.)

This court has stated that the provisions of section 889, as thus amended, " are clear, unambiguous and mandatory. Little room, if any, is left for construction or for discretion in their application. The Legislature, which has conferred upon the Board of Education power to determine the salary and compensation of all employees, has placed a rigid restriction upon its exercise. The salaries of positions as fixed in 1931 may not be reduced. * * * The Legislature has power to reduce a salary which seems to it excessive. It has withheld such power from the Board of Education." *(Matter of Putnam v. Marshall,* 286 N. Y. 485, 490.)

This limitation on the board's power, it should be noted, applies not only to the actual salary schedules on file on the " freeze " date, but also to the " schedule conditions " affecting the determination of salary, which were on file at that time. Thus, any attempted amendment by the board of its filed schedules or of its filed schedule conditions which operates to reduce the salary of a position below that fixed by the filed papers and frozen on March 5, 1931, is invalid. (See, e.g. *Nelson* v. *Board of Higher Education of City of N. Y.,* 288 N. Y. 649; *Adams* v. *Board of Higher Education of City of N. Y.,* 288 N. Y. 652; *Kory* v. *Board of Higher Education of City of N. Y.,* 292 N. Y. 547; *Dexter* v. *Board of Higher Education of City of N. Y.,* 293 N. Y. 39; *Cottrell* v. *Board of Education of City of N. Y.,* 293 N. Y. 792.)

This statement of background leads us to a consideration of the facts of the instant case. The plaintiffs here are all rein-

stated members of the teaching staff of the Board of Education of the City of New York. For present purposes, we may concern ourselves only with their first two causes of action. The first cause of action is for a declaration that section 95, subdivision 8(b), of the by-laws of the board of education, which purported to replace by-law, section 95, subdivision 8, is invalid. The second cause of action is for recovery of the difference in salary between that paid the plaintiffs and the salary to which they would be entitled if the amendment to by-law, section 95, subdivision 8, be invalid.

By-law, section 95, subdivision 8, in its original form provided as follows: " The certificate of the Superintendent of Schools that a principal, a supervisor, or a teacher has been credited by the Board of Examiners with a certain number of years of experience for service in schools other than the public schools of the City of New York, and the certificate of the Superintendent of Schools that a principal, a supervisor, or a teacher has rendered any number of years of satisfactory service in any part of what is now The City of New York, shall entitle such principal, supervisor, or teacher to the salary prescribed for the stated year of service by these By-laws. * * * " Under that by-law, it is clear that the present plaintiffs, as reinstated teachers, would be entitled to full credit for their years of teaching service in the public schools of New York City, prior to their temporary withdrawal from the school system. That by-law was adopted on February 6, 1929, and was filed in the office of the State Commissioner of Education, on February 26, 1929, within the requisite thirty days. *That by-law was the one on file on March 5, 1931, the " freeze " date fixed by section 889.*

By action dated January 8, 1930, and September 25, 1930, however, the board of education substituted for said by-law a new provision known as subdivision 8(b) of by-law, section 95. The new provision read as follows:

" In fixing the salary of supervisors, teachers, et al., who have withdrawn from the employ of the Board of Education, and who thereafter, are reinstated, service credit shall be given as follows:

" (b) If the withdrawn teacher shall apply for reemployment at a time more than one year after his withdrawal became effective, and he shall be reemployed pursuant to such application, he

shall on reemployment receive credit for so much of the service standing to his credit, immediately prior to his withdrawal, as is equal to said service credit divided by the time computed in years and fractional parts of a year, which shall have elapsed between the date of his withdrawal and the date of his reemployment; provided, however, that on reemployment, he shall not receive a greater service credit than is equal to the number of years prescribed in his schedule for the maximum salary less three years. But if the withdrawn teacher shall be reemployed pursuant to an application for such reemployment filed prior to September 24, 1930, the salary of said reemployed teacher shall be fixed in accordance with the By-laws as they existed on January 1, 1930.''

Thus, if the substitution of this by-law be valid, instead of receiving the full credit for prior years of service provided for by by-law, section 95, subdivision 8, a teacher re-employed pursuant to an application filed after September 24, 1930, would be entitled to only partial credit computed in accordance with the new subdivision 8(b) of by-law, section 95. The board's purported substitution accordingly results in a reduction of salary for those subject to its terms.

As applied to the instant case, the new by-law, if it be valid, would have the following effect: One group of the present plaintiffs (the so-called '' Connolly '' group who had submitted applications for re-employment *prior* to September 24, 1930) would be entitled to full salary credit under the very terms of the amended by-law. The other group of the present plaintiffs (the so-called '' Harman '' group who submitted their applications for re-employment after September 24, 1930) would only be entitled to a lesser salary credit computed in accordance with the amended law.

The date of final adoption of this new by-law by the board of education was September 25, 1930. It is undisputed that the board did not file a copy of the change in the by-law in the office of the State Commissioner of Education within thirty days of its adoption as required by the statute. It is further undisputed that a copy of the amended by-law was *not* on file on March 5, 1931, the '' freeze '' date. On that date, as indicated above, only the original by-law, section 95, subdivision 8, which had been adopted and filed in February, 1929, was on file in the office of the commissioner.

Subsequently, on April 20, 1932, about a year and a half after its final adoption, and a year after the statutory " freeze " date, the board filed a copy of the new by-law in the office of the commissioner. The failure to file within the requisite time was ascribed to inadvertence and clerical error on the part of the secretary of the board of education whose duty it was, under the board's practice and procedure, to file such by-laws.

Special Term held that the provisions of section 889, requiring the filing of a copy of the board's by-laws in the commissioner's office within thirty days of adoption, were directory only, and not mandatory; that the amended by-law, even though not filed, was effective to govern the determination of plaintiff's salaries; and that pursuant to that by-law only the " Connolly " group of plaintiffs was entitled to full salary credit, upon re-employment, for years of service in the system prior to withdrawal. The majority in the Appellate Division affirmed, over the dissent of two Justices who took the position that " plaintiffs' rights in accordance with the mandate of the statute must be determined on the basis of the filed schedules on the freeze date, and * * * defendant was not entitled to act upon the basis of different schedules which, though adopted, had not been filed." (275 App. Div. 694, 695.)

We agree with the dissenting Justices in the Appellate Division that plaintiffs' salaries must be determined on the basis of the schedules and schedule conditions on file in the office of the Commissioner of Education on March 5, 1931. The precise question has not previously been before us, but we have already indicated generally our view of the 1931 amendment to section 889. The provisions of that section, we have stated, " are clear, unambiguous and mandatory. Little room, if any, is left for construction or for discretion in their application." (*Matter of Putnam* v. *Marshall, supra,* p. 490.) The obvious purpose of the filing requirement in section 889 was to insure compliance by the board with the restrictions placed upon its power by the statute and to provide the Legislature with a convenient and readily available place of reference to the board's current by-laws affecting schedules and schedule conditions. Knowledge by the Legislature of the board's currently effective schedules and schedule conditions was a necessary prerequisite to any intelligent action by the Legislature thereon. In view of the thirty-day filing requirement of

section 889, which antedated the adoption of the 1931 "Salary Freezing Law", the Legislature could properly conclude that *all* of the board's current schedules and schedule conditions were then on file and available for inspection in the commissioner's office. The Legislature's judgment with respect to the wisdom of changes or modification of such schedules and schedule conditions, of necessity, was predicated upon the belief that only those by-laws, properly on file, were currently in effect. The whole history of salary legislation in this field makes clear that reliance was placed upon such *filed* by-laws and that the legislative will was repeatedly exercised in view of the condition of affairs demonstrated by the by-laws then on file in the commissioner's office. The commissioner's office is the statutory repository of such by-laws. The Legislature had no need to search any further for information as to possible recent amendments by the board. Thus, when the Legislature, in its wisdom, decided in 1931, to impose new minimum salaries, it could do so with confidence by the simple expedient of adopting *in toto,* the schedules and schedule conditions on file as of the selected date, March 5, 1931. We have absolutely no assurance that the Legislature would have so acted if, at that time, the board's attempted change of by-law, section 95, subdivision 8, had been on file in the commissioner's office and thus, constructively at least, called to the Legislature's attention. The Legislature could have demanded that the by-law be continued in its original form if the board had disclosed, by filing it, the new and substituted by-law now under consideration and, in default of accession to its wishes in that respect, the Legislature might well have refused to enact the statute. The failure of the board to comply with the plain mandate of the statute, even if such failure be ascribed to inadvertence and clerical error, resulted in the reasonable assumption by the Legislature that by-law, section 95, subdivision 8, in its original form and without amendment, was in effect on the " freeze " date, March 5, 1931. The schedules and schedule conditions then on file were expressly adopted as the new minimum standards. There is no warrant for holding that a schedule condition not then on file was nevertheless *unwittingly* so adopted by the Legislature.

There is no need to discuss the many cases cited by the parties on the question whether a particular act specified in a statute is

directory or mandatory. The cases involve countless factual variations, but one basic principle is consistently made clear — the function of the court in each case is to ascertain the intent of the Legislature. For the reasons stated above, which are to us compelling, we think the only possible view of legislative intent in the instant case is that the Legislature meant literally what it said so plainly, *i.e.*, that salaries in the New York City Board of Education were to be frozen at least at the levels then provided in the schedules and schedule conditions *actually on file* in the office of the Commissioner of Education on March 5, 1931. Any other construction of the statute does violence to the clear and unambiguous wording of section 889, and unjustifiably imputes to the Legislature, in making its enactment, a knowledge of a board by-law which was not filed and recorded in accordance with the legislative command.

We, of course, agree with the courts below that the board's attempted change in its by-laws in 1942, so as to deny any credit for prior years of service contravenes the mandate of section 889 and is thus invalid.

Since we now decide in favor of the plaintiffs on their first and second causes of action, it is unnecessary to consider their third and fourth causes of action. Even if successful on those latter causes of action, the plaintiffs would not obtain as great a financial benefit as they do by prevailing on the first and second causes. Accordingly, the plaintiffs in this situation do not press said third and fourth causes and we do not pass upon them.

For convenience, we have referred above to the sections of the Education Law as they were numbered prior to the revision of that law in 1947. The provisions of section 882 are now found in subdivision 1 of section 3101, and the provisions of section 889 are now substantially incorporated in section 3103 and paragraph (b) of subdivision 4 of section 3102.

The judgment should be reversed and the case remitted to Special Term for further proceedings not inconsistent with this opinion and the stipulation dated January 30, 1948, entered into by the parties.

LEWIS, DESMOND, DYE AND FULD, JJ., concur with BROMLEY, J.; CONWAY, J., dissents in opinion in which LOUGHRAN, Ch. J., concurs.

Judgment affirmed. [See 300 N. Y. 644.]