IRVING MARK et al., Appellants, *v.* BOARD OF HIGHER EDUCATION OF THE CITY OF NEW YORK, Respondent.

Argued May 31, 1951; decided July 11, 1951.

*Benjamin M. Zelman* for appellants.   I. Plaintiffs were entitled to be transferred from the Brooklyn College schedules to the Moffat schedules.   II. The practice and policy of defendant is inconsistent with defendant's interpretation of the statute. (*Matter of Adams* v. *Board of Higher Educ. of City of N. Y.,* 263 App. Div. 804, 288 N. Y. 652; *Nelson* v. *Board of Higher Educ. of City of N. Y.,* 263 App. Div. 144, 288 N. Y. 649.)   III. In the light of the history of teacher legislation and court decisions, it is unreasonable to assume that the Legislature intended to " freeze " illegal 1935 salaries for transfer purposes.   Assuming, *arguendo,* that such was its intention, it was without power to divest plaintiffs of " rights " acquired and vested under the 1931 amendment to section 889 of the Education Law.   (*Zuckerbrod* v. *Board of Higher Educ. of City of N. Y.,* N. Y. L. J., Jan. 24, 1949, p. 283, col. 2, 276 App. Div. 752, 300 N. Y. 765; *Wannerstrom* v. *Board of Higher Educ. of City of N. Y.,* N. Y. L. J., Apr. 13, 1949, p. 1329, col. 4, 276 App. Div. 752, 300 N. Y. 764; *Greene* v. *Board of Higher Educ. of City of N. Y.,* N. Y. L. J., Feb. 6, 1950, p. 457, col. 1, 278 App. Div. 753; *Matter of Putnam* v. *Marshall,* 286 N. Y. 485; *Nelson* v. *Board of Higher Educ. of City of N. Y.,* 263 App. Div. 144, 288 N. Y. 649; *Cottrell* v. *Board of Educ. of City of N. Y.,* 293 N. Y. 792; *Railroad Co-op. Bldg. & Loan Assn.* v. *Boston Bldg. Estates,* 149 Misc. 349; *People ex rel. Folk* v. *McNulty,* 256 App. Div. 82, 279 N. Y. 563; *Burch* v. *Newbury,* 10 N. Y. 374.)   IV. The defenses are insufficient in law. (*Cottrell* v. *Board of Educ. of City of N. Y.,* 267 App. Div. 817, 293 N. Y. 792; *Matter of Coll. of City of N. Y.* v. *Hylan,* 205 App. Div. 372, 236 N. Y. 594; *Matter of McAneny* v. *Board of Estimate & Apportionment of City of N. Y.,* 232 N. Y. 377; *Wakefield* v. *Board of Educ. of City of N. Y.,* 79 N. Y. S. 2d 420, 299 N. Y. 664; *Strum* v. *Board of Educ. of City of N. Y.,* 194 Misc. 182, 277 App. Div. 855, 301 N. Y. 803.)

*John P. McGrath, Corporation Counsel* (*Arthur H. Kahn* and *Seymour B. Quel* of counsel), for respondent.   The Legislature intended by the Moffat Law to validate the board's 1935 salary schedules and to permit the board to continue uninterruptedly the board's salary schedules then applicable to incumbents, including plaintiffs, and to " freeze " as of March 1, 1943, the salaries then being paid in the colleges.

FROESSEL, J. This declaratory judgment action involves the construction of the " transfer clause " of former section 889, subdivision b, of the Education Law (L. 1943, ch. 403, known as the Moffat Law), which, with later amendments not here relevant, is now section 3104 of the Education Law. That section, as effective April 8, 1943, so far as here pertinent, provided: " In any public institution of higher learning under the jurisdiction of the board of higher education of a city having a population of one million or more, the salaries and salary increments of the following positions of the teaching and supervising staff shall be: [setting forth salaries and increments]  *  *  *

"In transferring present incumbents *from a salary schedule superseded* by the provisions of this section, each incumbent so transferred shall have fixed for him for the year nineteen hundred forty-three a salary *at a rate not lower than that he enjoyed on March first of such year.*

" This subdivision shall *not operate to reduce salaries paid to* persons holding positions specified in this subdivision as of March first, nineteen hundred forty-three." (Emphasis supplied.)

Laws of 1943, chapter 403, which in its section 1 added the matter just quoted, provided in section 2 that: — " This act shall not affect *any right or claim heretofore accrued under salary schedules* and schedule conditions *lawfully applicable* during the period of the employment of any such officer or employee". (Emphasis supplied.)

The five appellants were appointed as instructors at Brooklyn College in 1937 and 1938 in accordance with a schedule of salary and salary conditions affecting the staffs of City, Hunter and Brooklyn Colleges, which was adopted by respondent in 1935. Appellants received increments in accordance with this 1935 schedule, and they were transferred to the " Moffat schedule " — i.e., that set up by chapter 403 of the Laws of 1943, above quoted — at the salaries they were actually receiving on March 1, 1943, under the 1935 schedule.

It is appellants' contention that the 1935 schedule was null and void; that they were entitled to be appointed in 1937 or 1938 at salaries provided in the salary schedule adopted by respondent in 1932 for Brooklyn College (which 1932 schedule

provided for higher salaries than the 1935 schedule); that they were likewise entitled to receive increments from 1937 or 1938 to 1943 in accordance with the 1932 schedule; and that it was incumbent upon respondent to transfer them in 1943 to the Moffat schedule in accordance with the salaries which they were lawfully entitled to receive on March 1, 1943, under the 1932 schedule rather than — as was done — transfer them in accordance with the salaries they were actually receiving under the invalid 1935 schedule.

The lower courts properly granted appellants retroactive pay to the effective date of the Moffat Law (except as barred by the Statute of Limitations), based on the differential between the 1935 and the 1932 schedules, but nevertheless declined to direct appellants' transfer from their lawful salary level under the 1932 schedule to the most nearly corresponding level on the Moffat Law schedule. We are all agreed that the 1935 schedule was illegal and that the 1932 schedule was controlling (*Matter of Cross* v. *Board of Higher Educ.*, 260 App. Div. 907; *Matter of Putnam* v. *Marshall*, 286 N. Y. 485; *Matter of Adams* v. *Board of Higher Educ.*, 263 App. Div. 804, affd. 288 N. Y. 652; *Nelson* v. *Board of Higher Educ.*, 263 App. Div. 144, affd. 288 N. Y. 649; *Kory* v. *Board of Higher Educ.*, 266 App. Div. 833, affd. 292 N. Y. 547; *Nyquist* v. *Board of Higher Educ.*, N. Y. L. J., May 1, 1943, p. 1699, col. 2, affd. N. Y. L. J., Dec. 22, 1943, p. 1862, col. 4; see, also, *Harman* v. *Board of Educ. of City of N. Y.*, 300 N. Y. 21, 29; *Wannerstrom* v. *Board of Higher Educ. of City of N. Y., Zuckerbrod* v. *Board of Higher Educ. of City of N. Y.*, 276 App. Div. 752, motion for leave to appeal denied 300 N. Y. 764, 765).

We must assume that the Legislature uses words in their lawful sense, and that when it provided that these appellants were to be transferred to the Moffat schedule " at a rate not lower than that * * * *enjoyed* on March first " of 1943 and that the Moffat Law should not operate " to reduce salaries *paid* " as of that date (emphasis supplied), it used the words " enjoyed " and " paid " in the sense of " lawfully entitled to enjoy " and " lawfully payable ", in accordance with and not in violation of, a former statutory mandate (Education Law, § 889, as amd. by L, 1931, ch. 540). The " rate * * * enjoyed "

by these appellants was the lawful rate to which they had the right under the 1932 schedule, and it follows that they were entitled to be transferred to the Moffat schedule in accordance with such rate, and to receive increments thereafter on the latter basis.

The saving clause in section 2 of that statute preserved not only the salary rights which had accrued to these appellants under the 1932 " lawfully applicable " schedule, but, since it used the words " *any* right or claim " (emphasis supplied), also the rights flowing from such salary rights, and one of such rights was the right to be transferred to the Moffat schedule on the basis of the 1932 schedule.

If, as respondent contends, the Legislature intended to transfer incumbents to the Moffat schedule at the salaries they were actually receiving in 1943, despite the illegality thereof, then it follows that the Legislature intended to leave such incumbents entirely at the mercy of fortuitous budgetary conditions, and respondent's whim, caprice, violation of a statutory mandate, or other improper action. If, for example, by reason of a temporary lack of appropriations or some clerical error or even arbitrary action by respondent, an incumbent was, on March 1, 1943, receiving far less than his lawful salary, or, to pose the extreme case, *nothing at all* at that particular time, then, carrying through respondent's argument, such incumbent would necessarily have been transferred to a salary line on the Moffat schedule far less than his lawful salary or even to the zero line. We cannot ascribe to the Legislature a purpose so unreasonable and unjust. If, after having frozen the 1932 schedule by virtue of section 889, as amended in 1931, to protect the teaching profession, the Legislature intended to reduce these salaries, it could have done so by the use of plain and direct language. We should not strain to spell out such intention.

In *Rasmussen* v. *City of New York* (301 N. Y. 532), we held that the statutory phrase " salary provided in the budget " (Local Laws, 1942, No. 45 of City of New York) meant not the salary *actually* and *in fact* provided in the budget, namely, $2,700, but rather the salary which under applicable law the plaintiff employee was lawfully entitled to have provided therein, namely, $3,180. Similarly, in *McGarey* v. *State*

*of New York* (276 App. Div. 793) it was said, in reference to a statute analogous to that now before us, '' The word ' paid ' here is used in its customary and not consummative sense. *It means what is required to be paid by law.* It does not mean that, if, in violation of a statutory mandate, there is a neglect by local fiscal officers to pay what the law requires them to pay, the State must take up local obligation where they leave off.'' (Emphasis supplied.)

In the light of these decisions, when the statute says that it '' shall not operate to reduce salaries *paid* '' (emphasis supplied), it means that it shall not operate to reduce the salaries '' required to be paid by law '' to appellants, namely, those set up by the 1932 schedule. The mere fact that here there was a '' neglect by local fiscal officers '', '' in violation of a statutory mandate '', to pay such lawful salaries cannot affect the result. Appellants, within the meaning of the Moffat Law, '' enjoyed '' their lawful salaries on March 1, 1943, even though, because of respondent's neglect, such salaries were not physically handed over to them. The right to demand constitutes enjoyment under the statute (*Fitzroy* v. *United States,* 17 F. Supp. 503, 507).

*Leighton* v. *Bearman* (302 N. Y. 865) is not in point. We there construed a statute which made it unlawful for a landlord to demand, accept or receive rent '' greater than the rent * * * received * * * on March first, nineteen hundred and forty-nine '' (Local Laws, 1949, No. 73 of City of New York). We held that the word '' received '' had reference to the rent actually and in fact received by the landlord on that date, and not to the rent as later increased retroactively as of November 15, 1948, by an order of the Federal Housing Expediter. There, however, the rent actually received on March 1, 1949, *was* the rent to which the landlord was *lawfully entitled on that date* even though such rent was later increased retroactively. But here the salaries paid under the 1935 schedules were always unlawful and ineffective, and no affirmative action by these appellants to seek increases over a basic lawful rate was necessary as there was in the *Leighton* case *(supra).*

The record before us contains what is said to be the '' legislative history '' of the Moffat Law. As it consists in large measure of self-serving documents, which in their effect are

so ambiguous and inconclusive as to be of no practical value in ascertaining legislative intent, it will serve no useful purpose to dwell upon it.

The judgments below should be modified by awarding appellants, in addition to the relief already granted under paragraph three of the prayer of the amended complaint, the relief prayed for in the remaining paragraphs of said prayer, in accordance with this opinion, and, as so modified, affirmed, with one bill of costs to appellants in this court and in the Appellate Division.

LEWIS, CONWAY and DYE, JJ., concur with FROESSEL, J.; LOUGHRAN, Ch. J., DESMOND and FULD, JJ., dissent.

Judgment accordingly.