In the Matter of the CITY OF NEW YORK, Appellant, Relative to Acquiring Title to Real Property Bounded by Duane Street, and Other Streets in the Borough of Manhattan. IRVING FRIEDMAN et al., Respondents.

First Department, December 16, 1965.

*Milton H. Harris* of counsel (*Seymour B. Quel* with him on the brief; *Leo A. Larkin, Corporation Counsel,* attorney), for appellant.

*Bernard L. Bermant* of counsel (*Edward F. McShane* with him on the brief; *Skinner & Bermant, Leddy & Raber,* attorneys), for respondents.

*Per Curiam.* In this case the court awarded $355,000 for Damage Parcel No. 9 (D. P. 9), an unimproved parcel of land located on Park Row between Duane and Pearl Streets. Title vested in the appellant July 31, 1962. When acquired by the city it was operated under lease as a parking lot and gas station. The city contended that the property which had been purchased in 1954 for $70,000 did not exceed in total value the sum of $92,200. While appellant questions if the proposed garage

actually represents the best use for Damage Parcel 9, it introduced into the record no evidence which would impel or support a contrary determination. The basis for the variation from the customary method of evaluating land used as was D. P. 9, when such land is taken by condemnation, was because the court found that claimant had entered into a long-term lease dated September 1, 1961 under which the lessee engaged to construct a garage facility on the premises at an agreed rental of $15,000 for the first year and $25,000 annually thereafter, with reversion and title to the improvement in the lessor upon termination of the lease. The court accepted claimant's contention that the city frustrated the proposed beneficial deal by its delay in issuing a building permit and subsequent condemnation. The court capitalized the $25,000 proposed rental figure at 7%, and made an award of $355,000. As was pointed out in the *Omnia* case (*Omnia Co.* v. *United States,* 261 U. S. 502, 513): "Frustration and appropriation are essentially different things." There is no obligation upon condemnation for the condemnor to pay for contract frustration.

When the September, 1961 lease was entered between claimant and Preferred Parking System the premises were already incumbered by a lease running to 1970. Claimant had entered into a written agreement with the then lessee of the premises for a surrender of such lease upon payment of $30,000, modified by a subsequent agreement to $27,000. Its right to the surrender expired December 1, 1961 and there is no written evidence that such right was extended or renewed. In fact the claimant never exercised its right and the property remained incumbered by such lease up to the time of taking. Additionally, plans were then on file for the improvement of D. P. 9 by the erection of a two-story garage building and these plans were not withdrawn until on or about November 17, 1961, though their withdrawal was requested by letter of November 8, 1961. The plans for the structure under the September, 1961 lease with Preferred Parking were filed on or about November 8, 1961. The president of Preferred Parking testified that on or about November 11, 1961 he was advised or learned that D. P. 9 would be condemned. The lease with Preferred Parking contained certain options for extensions of time in which the requisite conditions could be met, but in February, 1962 the prospective lessee demanded return of the $15,000, the first year's rent, and also sought to recover the $15,000 security payment held in escrow.

We pointed out earlier that the claimant had obtained a right of lease surrender from the lessee then occupying the premises,

but that that right of surrender expired December 1, 1961. When title vested in appellant on July 31, 1962 the lease with Preferred Parking had terminated and the original lessee still remained in possession, operating the parking lot and filling station. The award made apparently never considered that incumbrance but considered the lease with Preferred Parking as being actually in existence and, additionally, compensated the claimant for an expense never incurred, that is the surrender agreement payment. In any taking " the Constitution does not require a disregard of the mode of ownership — of the state of the title. It does not require a parcel of land to be valued as an unincumbered whole when it is not held as an unincumbered whole. It merely requires that an owner of property taken should be paid for what is taken from him." (*Boston Chamber of Commerce* v. *Boston,* 217 U. S. 189, 195.) Here the city is being required to pay for a theoretical creation.

In *Levin* v. *State of New York* (13 N Y 2d 87) cited by both parties, the land appropriated was unincumbered and it was established that claimants had been seeking an industrial site for a prospective tenant for about a year prior to the condemnation. Claimants entered a long-term lease with the lessee " whose financial responsibility was beyond question * * * Plans and specifications had been prepared in sufficient detail to enable construction experts to estimate construction costs with reasonable certainty " (p. 90). The Court of Claims on the hearing had received evidence of the lease, the prospective net rental income, the plans relating to the development of the property and evidence relating to construction costs. It also received testimony of sales of comparable parcels of land suitable for industrial use which was the use to which the subject parcel would have been put. The Court of Appeals concluded it was not error to receive the testimony concerning the lease, net rental income, plans and possible construction costs, and in affirming observed that the Court of Claims had fixed a market value well within the range of testimony. In other words, prospective rental value and land cost or market value would be considered by a careful purchaser and since the property dealing " had been crystallized in binding agreement " the prospective purchaser would naturally give careful consideration to prospective rental income and the court was justified in doing so (p. 92). The court was careful to note that the Court of Claims " did not fall into the error of valuing the property by capitalizing the net rental income as might have been proper if the building had been completed and rent had commenced "

(p. 91). Of course, in this case the prospective lessee, Preferred Parking, was to erect a structure which was proposed to be in operation by the commencement of the second rental year at which time the rent would be increased to $25,000, and unlike the *Levin* case there was no obligation on the lessor to construct the building. However, the court, in capitalizing the rental income, did so as if the building had been completed and the rental had actually commenced.

It was also brought out that while there was testimony that a performance bond, as required by the lease, was available, one had not been filed. Examination of the letter exhibit concerning such bond leaves some doubt as to its binding effectiveness. Nor were the plans for the proposed building filed by October 10, 1961 as required by the terms of the lease. Of course appellant unjustifiably delayed consideration of the plans when filed. It might also be noted that the general area has changed considerably, and for the better, since claimant purchased this property in 1954 for $70,000, and claimant is entitled to just compensation which "includes all elements of value that inhere in the property, but it does not exceed market value fairly determined" (*Olson* v. *United States,* 292 U. S. 246, 255). He is entitled to be made whole. "An owner of lands sought to be condemned is entitled to their ' market value fairly determined.' *United States* v. *Miller,* 317 U. S. 369, 374. That value may reflect not only the use to which the property is presently devoted but also that use to which it may be readily converted. *Boom Co.* v. *Patterson,* 98 U. S. 403; *McCandless* v. *United States,* 298 U. S. 342." (*U. S. ex rel. T. V. A.* v. *Powelson,* 319 U. S. 266, 275.) The 1961 lease contained escape clauses and was eventually terminated. Speculation and probabilities were accepted as realities. To require the city to pay for loss of a bargain when the award does not fairly represent the fair market value is effectively a confiscation of public property. In our view the award here of approximately $52.50 per square foot is not supported in the record. We are not overlooking the fact that the city failed to respond when it was offered an opportunity to produce testimony as to the best use.

Final decree entered June 17, 1964, insofar as appealed from, should be modified on the law and the facts to vacate the award as to D. P. 9 and to remand for further hearings, without costs or disbursements, and should otherwise be affirmed as to the fee award for D. P. 2, with costs and disbursements thereon to respondent.

BOTEIN, P. J., BREITEL, VALENTE, MCNALLY and STEVENS, JJ., concur.

Decree, so far as appealed from, unanimously modified, on the law and on the facts, so as to vacate the award as to D. P. 9, and to remand for further hearings, without costs or disbursements, and, as so modified, affirmed as to the fee award for D. P. 2, with $50 costs to respondent, Irving Friedman.