Babin, J.
Petitioners herein are all members of the New York City Police Department who participated in an examination for promotion to lieutenant. They have all since been appointed to the lieutenant grade but claim that they have been unlawfully denied a certain benefit, “ retroactive annual salary increments",[1] which the respondents, members of the New York City Department of Personnel and Bureau of the Budget and others (City), granted to other lieutenants appointed pursuant, to the same examination.
These other lieutenants received the benefit in question pursuant to a stipulation in another lawsuit, entitled Amendola v. Hoberman (Sup. Ct., N. Y. County), an article 78 proceeding which challenged the validity of some of the approved answers to the examination questions. This Amendola proceeding was commenced after the grading of the test but before a list ranking those eligible for promotion as a result of the examination was compiled. As incidental relief, the Amendola petitioners were seeking to stay the establishment of an eligible list until *491 the completion of their litigation. To avoid this stay, and allow the Police Department to make appointments, the City entered into a stipulation whereby it was agreed that if the Amendola petitioners were successful in their challenge, a revised list would be established, and upon actual appointment, each Amendola petitioner would be granted a retroactive date of appointment for all purposes, except back pay.[2]
The original eligible list was established by the City May 6, 1968, prior to judgment in Amendola. Subsequently, when the Amendola challenge was successful, the eligible list had to be revised in accordance with the various test answers newly approved by the judgment. "While the judgment required only the rerating of the examinations of the participants in the Amendola lawsuit, the Department of Personnel, on its own initiative, equitably rerated the examinations of all candidates in accordance with the revised answers, and issued a revised list of eligibles.[3]
The petitioners herein were not among the Amendola petitioners. They include candidates appearing for the first time on the revised list, and candidates who appeared on both the original and the revised lists but advanced in the revised ranking and thus would gain by use of the Amendola formula for calculating the date of appointment.[4] ***The present petitioners, like those in Amendola, were granted retroactive appointment *492 dates in accordance with their positions on the revised list for the purpose of future promotion. The Amendola petitioners, pursuant to the stipulation in their lawsuit, were granted the additional benefit of retroactive salary increments.
The petitioners herein challenge this differentiation as a violation of the equal protection guarantees of the Federal and State Constitutions,[5] and seek a declaratory judgment stating that they are entitled to receive retroactive annual salary increments for the period between their actual and retroactive appointment dates, as was granted the Amendola petitioners.
The equal protection provisions of both the Federal and State Constitutions apply to the actions taken by administrative departments of local governmental units. (See Moose Lodge No. 107 v. Irvis, 407 U. S. 163, 179 [1972]; Cooper v. Aaron, 358 U. S. 1, 16 [1958]; cf. Home Tel. & Tel. Co. v. Los Angeles, 227 U. S. 278, 289-291 [1913]; Bauch v. City of New York, 21 N Y 2d 599 [1967], cert. den. 393 U. S. 834 [1968].) An agency of the State denies equal protection when it treats persons similarly situated differently under the law (see Royster Guano Co. v. Virginia, 253 U. S. 412, 415 [1920]), and this difference may be created by the grant of a preference as well as by the imposition of a burden (cf. People v. Creeden, 281 N. Y. 413, 419-420 [1939]; People v. Havnor, 149 N. Y. 195, 205 [1896]). Controversies involving compensation are also subject to review under the guarantees of equal protection (see, e.g., Harmon v. Board of Educ., 300 N. Y. 21 [1949]).
Of course, not every difference in treatment violates the equal protection guarantee. As formulated in a recent Supreme Court decision, the traditional test for a denial of equal protection under State law is 1 ‘ whether the challenged classification rests on grounds wholly irrelevant to the achievement of a valid state objective.” (Turner v. Fouche, 396 U. S. 346, 362 [1970]; accord Matter of Hotel Assn. of N. Y. City v. Weaver, 3 N Y 2d 206, 212-213 [1957].) To apply this test we must, as an initial step, ascertain both the basis of the classification involved and the governmental objective purportedly advanced by the classification. The classification must then be compared to the objective to determine whether the classification rests “ upon some *493 ground of difference having a fair and substantial relation ” to the object for which it is proposed. (Reed v. Reed, 404 U. S. 71, 76 [1971]; Allied Stores of Ohio v. Bowers, 358 U. S. 522, 527 [1959]; Royster Guano Co. v. Virginia, 253 U. S. 412, 415, supra; accord Matter of Buttonow, 23 N Y 2d 385, 392 [1968].)
With these principles in mind, we turn to the facts at hand. The petitioners assert that they are similarly situated to those who have been granted the retroactive date of appointment for purposes of determining salary increment, in that they have all been appointed lieutenants pursuant to the same examination. Despite this similarity, the City argues that it has properly denied the retroactive annual salary increment to the petitioners, while granting it to others, by a classification based upon participation in the Amendola stipulation.[6] The City claims it is obligated to grant this benefit to those covered by the Amendola stipulation “osa matter of law ” but is not so obligated to the petitioners herein.
As to the governmental objective purportedly advanced by this classification, the City does not articulate a clear position.[7] However, since the petitioners’ request for retroactive salary increments was denied by the City Bureau of the Budget, it becomes apparent that the governmental interest purportedly advanced is economy and fiscal responsibility.
*494 Considering the classification involved and the governmental interest it purportedly advances, we may pose the question mandated by the equal protection guarantees of the State and Federal Constitutions: When granting salary benefits to police lieutenants, all of whom have been promoted as a result of the same competitive examination, is it reasonable, in order to limit expenditures, to classify the lieutenants on the basis of whether they participated in a stipulation incidental to a legal proceeding? On the present facts, the answer is clearly in the negative.
It is true, as respondents suggest, that the Amendola petitioners gave up a valuable litigation right, that of moving to stay the establishment of the eligible list, in order to achieve their retroactive benefits including the salary increments. However, in the present case, this right to stay the establishment of the eligible list may be said to have stemmed primarily from the Amendola petitioners’ participation in the faulty promotion examination and not from their institution of a lawsuit. The thrust of the Amendola stipulation was to assure the challengers that if they were ultimately successful, they would be placed, as nearly as possible, in the position they would have been in had the test been graded with the revised answers in the first instance.
Were the examination so graded, appointments would generally have been made according to the ranking of the revised list. Had this been done, each candidate would generally be appointed before the candidate immediately following him on the revised list. Since they would have been appointed and begun performing as lieutenants in this order, the candidates would have received annual salary increments based upon this date of appointment.
The fact that these events did not come to pass as outlined above is not attributable to any of the candidates, either the Amendola or the present petitioners, but rather to the use of the faulty answers in the initial grading. What the Amendola stipulation did was to guarantee to certain of the candidates that if the grading proved faulty, the effects of that mistake would be remedied with the exception of back pay. The challenge was successful and the initial grading and ranking shown unfair.
*495 . The City Department of Personnel, apparently recognizing that the concessions made in the Amendola stipulation were based on fundamental fairness in rectifying the results of a mistake, rather than on pure litigation bargaining, proceeded to regrade the papers of all candidates, not just those party to the stipulation. Furthermore, the respondents granted all candidates, not just those party to the stipulation, retroactive appointment dates for purposes of determining promotions. But with reference to remedying the effects of the faulty grading on salary increments the respondents balked. While voluntarily granting the other benefits obviously bespeaks an awareness that such remedial action was warranted because of the faulty grading itself, respondents inconsistently claim that the salary increment is a remedy required only by the stipulation. This inconsistency promotes and highlights the recognition that the difference in treatment with regard to the salary increments is arbitrary. Since the granting of all the retroactive benefits in question is based upon the initial faulty grading, any reasonable differentiation would be expected to be by a classification based on whether injury was incurred as a result of participation in the examination. Instead the classification here is based on participation in the stipulation, a factor which has no significant relation either to the cost burden placed upon the City, or the reason for granting the benefit. On the present facts, therefore, classifying those promoted based on their participation in the Amendola stipulation has no reasonable relation to a proper governmental objective; and consequently we find that the denial of the retroactive salary increments to the petitioners herein violates both the New York and United State's Constitutions.
The order appealed from should be reversed, with costs in this court, and the matter remitted to Special Term for the entry of a judgment directing respondents to grant to the petitioners herein all benefits accruing from the stipulation entered into February 29, 1968 in Amendola v. Hoberman (Sup. Ct., N. Y. County).
Chief Judge Bbeitel and Judges Jasen, Gabbielli, Jones and Waohtleb concur; Judge Stevens taking no part.
*496 Order reversed, with costs, and the matter remitted to Special Term for further proceedings in accordance with the opinion herein.

. The Police Department apparently offers its lieutenants annual salary increments based on their length of service as determined by their date of appointment as lieutenant. The benefit of “ retroactive ” salary increment would allow the use of a date earlier than the date of actual appointment for the purpose of determining salary increments.

. The retroactive date would be the actual date of appointment of the previously appointed candidate that immediately followed an Amendola petitioner on the revised list.

. This action was challenged by the eligibles on the original list (joined by the Amendola petitioners) who sought to limit such rerating to those who had participated in the litigation. The plenary rerating was upheld in Matter of Reis V. Hoberman (65 Misc 2d 966 [Sup. Ct., 1969]) on the grounds, inter alla, that “ [prejudice might well accrue to the people of the City of New York if the determination as to who should be a police lieutenant were based on who was more diligent in commencing a lawsuit rather than passing a promotional examination.” (Id., at pp. 969-970.)

. Illustrative is the situation of James M. Danaher. His position on the original list was 143. He was appointed a police lieutenant on June 5, 1969. His position on the revised list was 113. Since he was not a party to the Amendola stipulation his actual date of appointment is used for determining his annual salary increment. If he were able to use the Amendola formula, the date of appointment would be that of the candidate following him on the revised list, No. 114, an approximate date of appointment of January 17, 1969.

. U. S. Const., 14th Amdt.; N. Y. Const., art. I, § 11.

. The City also justifies its withholding this benefit on the ground that the petitioners had no clear right to this benefit because the Civil Service Commission Rules allow selection of any of the three highest ranking eligibles (see Civil Service Law, § 61). The argument is that this theoretically would allow a given petitioner to be passed over indefinitely. In fact, however, the petitioners were all appointed in regular order according to the listings. Furthermore, this justification misses the point because the petitioners are not asserting a right to be appointed but a right to equal benefits upon appointment.

. While respondents have not articulated a governmental purpose in relation to the classification, another member of the City Administration, then Police Commissioner Patrick V. Murphy, did so in a letter to the City Bureau of the Budget. Murphy recommended that favorable consideration be given to the petitioner’s request, indicating that such favorable action would improve morale while a denial would have “ the effect of penalizing those promotees who did not become litig[a]nts either because they originally passed the examination or were willing to accept the findings of the examiners of the Department of Personnel.” Thus, the only articulated governmental objective in the case weighs against a classification on the basis of participation in the Amendola stipulation.