OPINION OF THE COURT
Seymour Boyers, J.
This is an action to declare section 492 (A) of the by-laws of the Board of Education of the City of New York unconstitutional, and for related relief. Plaintiff moves, and defendant cross-moves, for summary judgment.
*481 The facts are not in dispute. Plaintiff was appointed by the Board of Education of the City of New York as a teacher of Common Branches in September of 1968 and held that position until June, 1970 at which time she resigned in order to accompany her husband to Maryland. Prior to her resignation the plaintiff had advanced to salary step 2-B. Plaintiff alleges that from August, 1970 to June, 1973 she was employed as a first-grade teacher in Maryland. In September, 1973 plaintiff returned to New York and resumed service as a regular substitute teacher in the New York City school system. On January 2, 1974 plaintiff received permission to withdraw her resignation and resumed service as a regular teacher of Common Branches.
Plaintiff applied to the Board of Education, Bureau of Salary Differential and Status, for salary credit for her three years of teaching experience in Maryland. That request was denied on October 17, 1973 pursuant to section 492 (A) of the by-laws which provides: "A member of the teaching and supervising staff who has been permitted to withdraw his resignation shall, upon assignment to duty, be placed in the appropriate salary schedule at the same step or year at which he was paid immediately prior to such resignation, and his equated date of appointment for salary increment purposes shall be appropriately revised to reflect the years of non-service.” Plaintiff thereafter pursued administrative remedies, all of which resulted in affirming the initial determination.
The thrust of the complaint is that the by-law provision denies to former New York City teachers who have resigned and subsequently withdrawn their resignations, salary credit for teaching experience gained during their absence while another by-law provision (§ 491 Bl) gives salary credit for outside teaching experience to newly appointed teachers. Plaintiff contends that this is a classification which is violative of the equal protection clause.
The equal protection clause applies "to the actions taken by administrative departments of local governmental units” (Matter of Abrams v Bronstein, 33 NY2d 488, 492), and controversies relating to compensation have been subject to review under its guarantee (see Harman v Board of Educ., 300 NY 21). In Harman, plaintiffs, who had taught in the New York City school system, resigned and were subsequently reassigned, sought a declaration that a particular by-law was invalid since it afforded less salary credit for years of prior *482 service to them than they would have received had they been original applicants with previous experience in schools without the New York City school system. The court, noting that the plaintiffs had not squarely raised a constitutional issue, nonetheless held that under the rational basis test for discrimination under the equal protection clause the by-law was not invalid.
Plaintiff in the case at bar urges upon this court that the standard of review not be rational basis but rather the strict scrutiny test.
"Traditional equal protection analysis is two tiered. Most classifications are subject to the lax standard of rationality which tests whether the challenged classification bears a reasonable relationship to some legitimate legislative objective. The test has been applied with great indulgence, especially in the area of economics and social welfare where, for example, it has been said that '[i]f the classification has some "reasonable basis,” it does not offend the Constitution simply because the classification "is not made with mathematical nicety or because in practice it results in some inequality” ’. (Dandridge v Williams, 397 US 471, 485; see Matter of Levy, 38 NY2d 653; Matter of Figueroa v Bronstein, 38 NY2d 533; Gleason v Gleason, 26 NY2d 28; Matter of Bauch v City of New York, 21 NY2d 599.) Indeed, in actual application the rejection of classifications under this test appear to be rare.
"Where, however, a statute affects a 'fundamental interest’ or employs a 'suspect’ classification, the strict scrutiny test has been applied. That test requires that the legislative purpose be so compelling as to justify the means utilized. Identified as suspect are classifications based on alienage (Matter of Griffiths, 413 US 717; Sugarman v Dougall, 413 US 634; Graham v Richardson, 403 US 365), national origin (Hernandez v Texas, 347 US 475; Takahashi v Fish & Game Comm., 334 US 410, 418-420), and race (Loving v Virginia, 388 US 1, supra; McLaughlin v Florida, 379 US 184, supra). Fundamental interests include voting (Dunn v Blumstein, 405 US 330; Harper v Virginia Bd. of Elections, 383 US 663), travel (Shapiro v Thompson, 394 US 618), procreation (Skinner v Oklahoma, 316 US 535), the right of free speech (Police Dept, of Chicago v Mosely, 408 US 92), the right of a criminal defendant to appeal (Williams v Illinois, 399 US 235; Griffin v Illinois, 351 US 12) and, perhaps, the right of privacy (see Roe *483 v Wade, 410 US 113; Eisenstadt v Baird, 405 US 438).” (Alevy v Downstate Med. Center of State of N. Y., 39 NY2d 326, 332.)
Plaintiff contends that the by-law constitutes an infringement of the right to travel, which calls into play the strict scrutiny test. Plaintiffs reliance, however, on Shapiro v Thompson (394 US 618), Dunn v Blumstein (405 US 330) and Memorial Hosp. v Maricopa County (415 US 250) is misplaced. In Memorial Hosp. v Maricopa County (supra), the Supreme Court stated at page 258: "Shapiro and Dunn stand for the proposition that a classification which 'operates to penalize those persons * * * who have exercised their constitutional right of interstate migration,’ must be justified by a compelling state interest.” It is the penalty analysis of Shapiro which is the key to the cases involving durational residence requirements. The penalty exacted in Shapiro was a deprivation of basic sustenance; in Dunn, disenfranchisement; and in Memorial, denial of nonemergency hospitalization and medical care at county expense. If any penalty can be said to be exacted for the instant plaintiffs mobility, it is purely economic and does not reach the fundamental significance espoused by the cases (see Vlandis v Kline, 412 US 441). Nor has plaintiff demonstrated the need to apply the middle level test propounded in Alevy v Downstate Med. Center of State of N. Y. (supra).
Thus, the test to be applied is the rational basis test (see Riley v County of Monroe, 43 NY2d 144; see, also, Harman v Board of Educ., 300 NY 21, supra; Bukovsan v Board of Educ., 61 AD2d 685). One asserting a challenge based on a denial of equal protection has to overcome the strong presumption of constitutionality and has to demonstrate unconstitutionality beyond a reasonable doubt (Matter of Malpica-Orsini, 36 NY2d 568). Thus, "a statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it”. (See Malpica-Orsini, supra, p 571; see, also, Lighthouse Shores v Town of Islip, 41 NY2d 7, 13.) Measured against this standard the by-law at issue passes constitutional muster. Interestingly, the basis for the two by-law provisions is substantially the same as it was in Harman v Board of Educ. (supra). The court there stated at page 31: "Eligibility requirements are far more stringent for original applicants than for those who seek reinstatement, and examinations for the latter are much simpler. Teachers seeking reinstatement take a shorter and less arduous qualifying examination, while new applicants take a competitive examination.” Presently, no *484 licensing examination is required of teachers seeking to withdraw their resignations nor are they caused to await appointment from an eligibility list. Moreover, returning teachers have the option of retaking the licensing examination in order to be eligible for salary credit for outside interim teaching experience. The by-laws thus serve to attract qualified teachers and to discourage equally qualified teachers from leaving the school system.
Finally, while the court need not reach the issue of waiver by virtue of the contract between the board of education and the United Federation of Teachers which contains language identical to that of the challenged by-law, it notes that Antinore v State of New York (49 AD2d 6, affd 40 NY2d 921) would support a determination of waiver and would be controlling. -
Accordingly, plaintiffs motion is denied. Defendant’s motion for summary judgment is granted and the court declares section 492 (A) of the by-laws of the Board of Education of the City of New York to be constitutional and valid, and further declares that plaintiff was properly placed on the appropriate salary schedule upon resuming her teaching career.
Submit judgment.