LEONARD MARGOLIS, Appellant, v NEW YORK CITY TRANSIT AUTHORITY, Respondent.

First Department, May 15, 1990

**APPEARANCES OF COUNSEL**

*Joan Stern Kiok* for appellant.

*Edward F. Zagajeski* of counsel *(Albert C. Cosenza,* attorney), for respondent.

### OPINION OF THE COURT

WALLACH J.

In many hierarchical organizations certain ranks both high and low have disappeared with time. Thus, the Navy no longer commissions commodores, the Army no longer makes color sergeants, and that once lofty figure of the English and Irish Bar,[1] the coifed serjeant-at-law, has passed into oblivion.[2] It would seem true that the disappearance of these functionaries was accomplished with some regret, and their loss is now recalled on appropriate occasions with affectionate nostalgia.

Such has not been the fate of petitioner in this CPLR article 78 proceeding, who is 1 of only 3 surviving trainmasters appointed by the New York City Transit Authority (TA) and since his appointment in 1982, still serving in that post.[3] Far from being valued as a treasured remembrance of things past, the TA has seen fit to exclude him from the wage increases granted other supervisory transit personnel of 5, 6 and 6% effective for the years January 1, 1985, 1986 and 1987. In this proceeding petitioner seeks to redress this perceived inequity. The IAS court has sustained the TA in its discriminatory treatment of petitioner and has dismissed his petition. We reverse, reinstate the petition, and remand with directions to permit petitioner discovery to precede the hearing we direct to follow.

Petitioner is a casualty of the management reform program instituted by the TA in 1984 whereby 102 new superintendent and deputy superintendent positions were created for rapid transit operations. These new positions were vested with far more managerial authority than the trainmasters, and were

---

1. Lindley, J., on his elevation to the Bench in 1875 was the last English serjeant; A.M. Sullivan, Q.C., who was appointed in 1920 and died in 1959 was the last Irishman to hold the office. *(See,* Megarry, A Second Miscellany-at-Law, at 28-29 [Stevens & Sons Ltd. 1973]).

2. The only English serjeant widely known to the American reading public was Mr. Serjeant Buzfuz, the leading silk for the plaintiff in the trial of *Bardell v Pickwick.* His unsuccessful opponent, Mr. Serjeant Snubbin, is now known only to those college English departments which maintain a course in the Victorian novel.

3. Petitioner has been employed by the TA for 23 years, having started as a conductor in 1965, with promotions to motorman (1967), yardmaster (1968), dispatcher (1969) preceding his present elevation.

vastly more accountable for efficient results. Forty-two train-masters qualified for the new superintendent or deputy superintendent title, but petitioner did not. (The only two other trainmasters left in the system beside petitioner were demoted from superintendent.) With this attrition of trainmasters their collective bargaining representation vanished, and there was no voice to speak for petitioner's inclusion in the general wage increases granted other supervisors in 1985 to 1987.

The TA argues that the public officer seeking payment from the public treasury must "put his finger on some statute whereby payment is permitted" *(Stetler v McFarlane,* 230 NY 400, 408; *Grossman v City of New York,* 71 Misc 2d 234, 235). It notes that expenditure of public funds is constitutionally prohibited in the absence of express statutory or contractual authority *(see, Hess v Board of Educ.,* 41 AD2d 151), and this principle has been expressly applied to the TA *(Matter of Rubinstein v Simpson,* 109 AD2d 885, 886). It is urged that where, as here, the party claiming a right to a salary payment has established neither a contractual nor a statutory right to the relief, the court must dismiss the claim. *(Lombardi v City of New York,* 38 NY2d 727, *affg on opn below at* 46 AD2d 750.)

Petitioner does not point to any statutory or contractual source for the wage increase he seeks. Rather, he rests his claim on the equal protection granted him under the 14th Amendment of the US Constitution and section 11 of article I of the NY Constitution. In *Matter of Abrams v Bronstein* (33 NY2d 488, 492 [1974]), the Court of Appeals stated that "[a]n agency of the State denies equal protection when it treats persons similarly situated differently under the law". It formulated the following test for the constitutional assessment of any such disparate treatment: "[T]he traditional test for a denial of equal protection under State law is 'whether the challenged classification rests on grounds wholly irrelevant to the achievement of a valid state objective.' * * * To apply this test we must, as an initial step, ascertain both the basis of the classification involved and the governmental objective purportedly advanced by the classification. The classification must then be compared to the objective to determine whether the classification rests 'upon some ground of difference having a fair and substantial relation' to the object for which it is proposed." (33 NY2d, at 492-493.)

As the Supreme Court put it in *Allied Stores of Ohio v Bowers* (358 US 522, 527 [1958]): "But there is a point beyond which the State cannot go without violating the Equal Protec-

tion Clause. The State must proceed upon a rational basis and may not resort to a classification that is palpably arbitrary. The rule often has been stated to be that the classification 'must rest upon some ground of difference having a fair and substantial relation to the object of the legislation' ".

Applying those principles in *Matter of Abrams v Bronstein (supra)* the Court of Appeals has found that it was not permissible to grant retroactive salary increments to employees who had participated in a stipulation involving a legal challenge to a promotion examination and to deny the same increments to employees in the same title who had not participated in the stipulation, since the reason given for the classification, i.e., limiting expenditures, was not rationally related to a valid governmental objective. Obviously, fiscal considerations in this single employee case do not carry any weight.

An impressive line of cases has held that arbitrary salary differentials for government servants cannot be maintained in the face of an equal protection challenge: *Weissman v Evans* (56 NY2d 458 [salary disparities between District Court Judges of adjoining counties]); *Weissman v Bellacosa* (129 AD2d 189 [salary disparity between County Court Judges in adjoining counties]); *Kendall v Evans* (126 AD2d 703 [salary deferentials between Judges of different City Courts within a single county]); *Anderson v County of Suffolk* (97 AD2d 448 [illogical linkage of higher step in salary grade based on date of promotion]); *Schneider v Ambach* (135 AD2d 284 [discrimination between non-full-time classroom teachers who were represented by unions from those not members of collective bargaining units]); *Nassau Ch., Civ. Serv. Employees Assn. v County of Nassau* (88 Misc 2d 289 [step increases in salary improperly denied to employees earning over $25,000 a year affecting a total of 45 out of 14,000 employees]); *Matter of Scime v County Legislature* (90 Misc 2d 764 [discrimination against nonunion employees]). Clearly then, the singling out of petitioner as uniquely unqualified for general wage increases granted all other supervisory personnel is subject to equal protection scrutiny, and cannot be sustained in the absence of a rational basis.

At the outset of such scrutiny, we should note that the TA is a public benefit corporation created by Public Authorities Law § 1201 (1) and it is not a division of the State *(Matter of Subway-Surface Supervisors Assn. v New York City Tr. Auth., 44 NY2d 101, 107; Green v Bala, 57 AD2d 1041; Collins v Manhattan & Bronx Surface Tr. Operating Auth., 62 NY2d*

361). Although fiscally interdependent with the City of New York, the TA is an entity separate therefrom *(Matter of Rubinstein v Simpson,* 109 AD2d 885). Public Authorities Law § 1210 (2) provides that appointment, promotion and employment of all employees of the TA "shall be governed by the provisions of the civil service law". Civil Service Law § 115 declares it to be "the policy of the state to provide equal pay for equal work". We understand that the position of petitioner on this appeal excludes the contention that his duties as trainmaster are the same as a deputy superintendent or superintendent. Rather, he maintains that his disqualification from the general wage increase was arbitrary and capricious.

For its part, the TA asserts that the denial of the uniform wage increase to petitioner was founded upon a rational basis, namely, to avoid the evil of "salary compression" as evidenced by the following. Subsequent to the managerial reform of 1984, and in the following year, the highest salary rate for a trainmaster ($43,305) exceeded the lowest salary paid to a deputy superintendent ($39,794) and the salaries paid to 10 other deputies.[4] The highest trainmaster's salary continued to exceed that of the lowest paid deputy superintendent in 1986 and 1987 ($40,120 and $40,337, respectively). Six deputies made less than trainmasters in 1985 and three others in 1987. Thus, says the TA, salary compression existed between the trainmaster and deputy superintendent titles, and to relieve this compression the salaries of trainmasters were frozen. Palliation of salary compression, the TA urges, was a legitimate objective to be accomplished by a freeze of trainmaster salary rates, and provided a rational basis for the TA's action. Avoidance of salary compression as a rationale for agency action in withholding salary increases has been upheld as a legitimate exercise of managerial prerogative *(Matter of Shattenkirk v Finnerty,* 97 AD2d 51, *affd on opn below* 62 NY2d 949).

In our view, the issue of salary compression raised by the TA simply presents a triable issue under CPLR 7804 (h). Petitioner cogently argues that the evil of salary compression alleged to be averted by discrimination against 2 or 3 employees in an organization as large as the TA may well be a sham position. (In *Matter of Shattenkirk v Finnerty, supra,* the

---

4. The issue of "salary compression" is bound to strike a sensitive judicial nerve. It was, after all, not so long ago, when the annual salary of the Chief Clerk of this court exceeded that of the Presiding Justice.

freeze applied to approximately 200 management employees.) The possibility arises that the TA, to implement its policy of attrition for trainmasters, seeks to force petitioner's retirement. Petitioner points out that by July 1, 1988, approximately two months before this proceeding commenced, the lowest paid deputy superintendent was earning $48,964 annually, over $5,000 more than the highest salary of a trainmaster. Under the circumstances, we hold that petitioner is entitled to reasonable discovery under CPLR 408 with respect to the steps taken by the TA, other than those addressed against petitioner, to meet the problem of salary compression. Clearly, petitioner is entitled to this information in order adequately to prepare for trial.

We also hold, contrary to the IAS court, that the question of salary compression at the other end of the scale (namely, that dispatchers may in the future be paid more than trainmasters commencing in August 1988), is also relevant on the bona fides of the TA's position, and is a fair subject for development at the hearing.

Accordingly, the order and judgment of Supreme Court, New York County (Stanley Sklar, J.), entered March 30, 1989, which dismissed the petition in this article 78 proceeding and denied petitioner's motion for discovery, should be reversed, on the law, the petition reinstated, and the matter remanded for a hearing; petitioner's application for a deposition of a Transit Authority officer or employee with knowledge of the facts prior thereto should be granted, without costs.

MILONAS, J. P., ELLERIN and RUBIN, JJ., concur.

Order and judgment (one paper), Supreme Court, New York County, entered on or about March 30, 1989, unanimously reversed, on the law, without costs and without disbursements, the petition reinstated and the matter remanded for a hearing; petitioner's application for a deposition of a Transit Authority officer or employee with knowledge of the facts prior thereto is granted.