In the Matter of JOSEPH E. McDERMOTT, as President of the Civil Service Employees Association, Inc., et al., Respondents, v DALL FORSYTHE, as Director of the Division of Budget, et al., Appellants.

Third Department, March 4, 1993

## APPEARANCES OF COUNSEL

*Robert Abrams, Attorney-General,* Albany *(Lew A. Millenbach* and *Nancy A. Spiegel* of counsel), for appellants.

*Nancy E. Hoffman,* Albany *(Maureen Siedel* of counsel), for respondents.

**OPINION OF THE COURT**

LEVINE, J.

Petitioners, other than the President of the Civil Service Employees Association, Inc., are employees of respondent agencies who were approved for reclassification to newly created civil service titles of Secretary I or Secretary II. In this CPLR article 78 proceeding, they challenge as arbitrary and capricious and a denial of equal protection respondents' administrative determination to establish dates beyond the earliest possible effective dates for retroactive reclassification to the new titles.

Respondent Department of Civil Service, Division of Classification and Compensation (hereinafter DCS) reclassified certain titles to the newly created titles of Secretary I or Secretary II to reflect job tasks actually being performed. Respondent Division of the Budget (hereinafter DOB), pursuant to Civil Service Law § 121, authorized creation of these new titles and announced guidelines therefor in a budget bulletin which indicated that approval of position reclassifications "will be based upon each agency's ability to absorb current year costs within cash disbursement limits". It set an effective date of October 26, 1989 for titles in the Administrative Services bargaining unit and November 2, 1989 for titles in the Institutional Services bargaining unit, the different dates reflecting their alternate payroll periods. It is undisputed that no additional funds were appropriated or available to the agencies for these reclassifications. Pursuant to DOB guidelines, the agencies selected effective dates applicable on an agency-wide basis, i.e., the same effective date was designated for all affected employees within each agency. The respondent agencies established effective dates beyond the earliest possible effective dates noted in the DOB guidelines.

Petitioners commenced this CPLR article 78 proceeding in March 1991 seeking a declaration that respondents' actions in establishing effective dates for their reclassifications to the new titles later than October 26, 1989 or November 2, 1989— the dates noted in the DCS and DOB memoranda approving the creation of new titles and reclassifications—were arbitrary and capricious and violated the Equal Protection Clauses of the Federal and State Constitutions because other agencies

established effective dates for secretaries reclassified as of these earlier dates and, thus, similarly situated employees were being compensated differently. Petitioners sought an order directing respondents to implement the earliest effective dates (i.e., October 26, 1989 and November 2, 1989) for reclassification for themselves and others similarly situated.

Respondents interposed their answer, denying that their actions were improper and submitting numerous affidavits of officials involved in the reclassification process. Significantly, respondent Director of DOB stated in his affidavit that the effective dates in the budget bulletin were simply the "earliest possible effective dates for the reclassifications, contingent upon an agency's ability to support the cost of the reclassifications within available resources".

Supreme Court ruled that the challenged administrative action violated equal protection principles because it resulted in employees who are performing the same job duties being treated differently solely on the basis of whether their agency had a budget allocation sufficient to absorb additional salaries resulting from the reclassification. The court rejected respondents' claim that such budgetary limitations provide a rational basis for their actions.

We conclude, however, that Supreme Court erred in determining that respondents' establishment of varying effective dates dependent upon their respective agencies' ability to absorb the additional costs violated the Equal Protection Clauses of the Federal and State Constitutions (see, US Const 14th Amend; NY Const, art I, § 11). The breadth of coverage afforded by these two clauses has been held to be equal (see, *Dorsey v Stuyvesant Town Corp.,* 299 NY 512, *cert denied* 339 US 981; *Matter of Shattenkirk v Finnerty,* 97 AD2d 51, 55, *affd on opn below* 62 NY2d 949), and they apply to compensation controversies (see, *Matter of Abrams v Bronstein,* 33 NY2d 488; *see also, Harman v Board of Educ.,* 300 NY 21). In matters such as this, not involving a suspect class or fundamental right, the standard for judicial review of State action challenged on equal protection grounds is whether the challenged action bears a rational relation to a legitimate governmental interest (see, *Matter of Shattenkirk v Finnerty, supra,* at 55; *see also, Frontiero v Richardson,* 411 US 677; *People v Whidden,* 51 NY2d 457, *appeal dismissed* 454 US 803). It is well established that in matters concerning the allocation of the public fisc, the courts do not review the wisdom or the propriety of the decisions (see, *Matter of Tolub v Evans,* 58

NY2d 1, 8, *appeal dismissed* 460 US 1076; *Matter of Shatten-kirk v Finnerty, supra,* at 57). The appropriate test is " 'whether the challenged classification rests on grounds wholly irrelevant to the achievement of a valid state objective' " *(Matter of Abrams v Bronstein, supra,* at 492, quoting *Turner v Fouche,* 396 US 346, 362). In applying this test, we first must "ascertain both the basis of the classification involved and the governmental objective purportedly advanced by the classification. The classification must then be compared to the objective to determine whether the classification rests 'upon some ground of difference having a fair and substantial relation' to the object for which it is proposed" *(Matter of Abrams v Bronstein, supra,* at 492-493, quoting *Reed v Reed,* 404 US 71, 76; *see, Allied Stores v Bowers,* 358 US 522, 527; *Matter of Buttonow,* 23 NY2d 385, 392; *Margolis v New York City Tr. Auth.,* 157 AD2d 238, 240-241; *see also, United States R. R. Retirement Bd. v Fritz,* 449 US 166, 174-177).

Applying these principles, we conclude that respondents' action does not offend the equal protection rights of petitioners. The "classification" involved here reflects the agencies' ability to absorb the reclassification costs within existing and fixed budgets. The maintenance of balanced State and agency budgets is a valid governmental objective, which is advanced here by the provision of flexible effective dates for the reclassifications *(see, Matter of Tolub v Evans, supra,* at 10). Indeed, petitioners do not argue that there were sufficient funds available in the agency budgets to absorb the cost associated with establishing the earliest possible effective dates. At the time of the reclassifications, the State was suffering from continuing fiscal constraints and exigencies and was unable to provide any additional funding to cover the significant costs of the reclassifications. Under these circumstances, it was certainly rational for respondent Director of DOB to adopt guidelines for the reclassifications which factored in these fiscal realities and required the affected agencies to demonstrate their ability at that time to absorb the costs of reclassifications within their existing budgets. There is nothing "palpably arbitrary" about the flexible effective dates *(Allied Stores v Bowers, supra,* at 527) because they reflected the agencies' ability to absorb the reclassification costs.

The cases upon which petitioners principally rely do not compel a contrary result. In *Matter of Abrams v Bronstein (supra,* at 495), the Court of Appeals determined that paying

salary increments to police lieutenants depending upon whether they had participated in a stipulation discontinuing a legal challenge to a promotion exam violated equal protection principles because the classification had "no significant relation either to the cost burden placed upon the City, or the reason for granting the benefit" and, therefore, had "no reasonable relation to a proper governmental objective". In *Margolis v New York City Tr. Auth. (supra),* the First Department ruled that a triable issue of fact was raised as to whether salary compression provided a rational basis for excluding a small number of trainmasters from wage increases granted other supervisory personnel. Here, by contrast, the " 'challenged classification' ", i.e., for which agency an employee worked and that agency's ability to absorb reclassification costs, is not " 'wholly irrelevant' " to the achievement of the valid State objective of fiscal responsibility, but rather the classification and the flexibility were critical components to achieve that objective *(Matter of Abrams v Bronstein, supra,* at 492). In this respect, petitioners are not "similarly situated" to reclassified employees who worked for agencies which had the resources to establish earlier effective dates and cover the considerable costs associated therewith *(see, Royster Guano Co. v Virginia,* 253 US 412, 415). Moreover, all reclassified employees within a given agency who were similarly situated were given the same effective dates. Equal protection, especially in matters regarding the State budget, "does not require that all classifications be made with mathematical precision * * * [n]or does the principle of equal pay for equal work mandate that such principle must be applied in all cases under any and all conditions" *(Matter of Shattenkirk v Finnerty, supra,* at 57-58; *see, Matter of Tolub v Evans, supra,* at 8; *see also,* Civil Service Law § 115).

WEISS, P. J., YESAWICH JR., CREW III and CASEY, JJ., concur.

Ordered that the judgment is reversed, on the law, without costs, determination confirmed and petition dismissed.